**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL CURTIS REYNOLDS,      :      CIVIL ACTION NO. **4:CV-06-1400**
                                     :
          Plaintiff            :      Magistrate Judge Blewitt
                                     :
           v.               :
                                     :
CAPTAIN KATZ, et al.,           :
                                     :
          Defendants       :

## <u>MEMORANDUM AND ORDER</u>

Plaintiff, Michael Curtis Reynolds, filed this civil rights action, pursuant to 42 U.S.C.

§ 1983, on July 17, 2006.  Plaintiff was a federal pre-trial detainee at Lackawanna County Prison

("LCP"), Scranton, Pennsylvania, during the relevant times of this case.  Plaintiff is proceeding *pro

se.*[1]

On December 1, 2009, the District Court issued a Memorandum and Order and

dismissed all of Plaintiff's claims in the instant case except for his excessive force claim arising on

July 14, 2006, while Plaintiff was a pre-trial detainee at LCP, and his claim that he was improperly

placed in disciplinary custody after the incident. (Doc. 283).  The District Court stated, in pertinent

part, as follows:

        1.      Defendants' supplemental motion for summary judgment
                  (Doc. 250) is granted in part.

---

[1].  Plaintiff is currently an inmate at USP-Allenwood, White Deer, Pennsylvania, and he is serving a 360-month federal sentence.  Recently, on March 18, 2010, the Third Circuit Court of Appeals affirmed Plaintiff's Judgment and Commitment.  *See U.S. v. Reynolds*, 2010 WL 971818 (3d Cir. 3-18-10).

2. Summary Judgment is granted with respect to Plaintiff's claims relating to denial of access to the law library and medical treatment following a July 14, 2006 incident while confined as a pre-trial detainee at the Lackawanna County Prison.

3. Plaintiff's cross supplemental motion for summary judgment (Doc. 257) is DENIED.

4. Reynolds' claims of being subjected to excessive force on July 14, 2006 **and thereafter being improperly subjected to a term of disciplinary custody will proceed**.

(Doc. 283, pp. 17-18)(emphasis added).[2]

On May 5, 2010, the Court issued an Order and directed that the parties file 3-page letter briefs on the above stated *Heck* issue by May 20, 2010. The Court indicated that it would hear argument, outside of the presence of the jury, on the *Heck* issue after the jury was selected and prior to opening statements. (Doc. 350). As a result of the continuance of the jury selection and trial, a second Order was issued on May 12, 2010, affording the parties until June 1, 2010, to file their letter briefs. (Doc. 356). The parties submitted their filings as directed by the Court. (Docs. 361, 362, and 364).

This Court has repeated that Plaintiff's trial will only relate to his excessive force claim against Defendants Girvasi, Moskwa and Katz arising while Plaintiff was a pre-trial detainee in Lackawanna County Prison on July 14, 2006, and his claim that he was improperly placed in disciplinary confinement after the incident. Moreover, this Court has pointed to the District Court's above quoted December 1, 2009, Memorandum and Order regarding which of Plaintiff's

---

2. On January 19, 2010, the parties consented to proceed before the undersigned for trial pursuant to 28 U.S.C. §636(c). (Doc. 292).

claims were dismissed and which claims remained for trial. Specifically, as stated, the District Court held the following claims remained in this case:

> Reynolds' claims of being subjected to excessive force on July 14, 2006 **and thereafter being improperly subjected to a term of disciplinary custody will proceed**.

(Doc. 283, pp. 17-18) (emphasis added).[3]

During one of the pre-trial conferences conducted by this Court, the parties stated that after the July 14, 2006 incident involving Plaintiff at LCP in which he attempted to wear his shower sandals to the prison law library, he was charged with a misconduct for failing to obey by an order of prison staff. Subsequently, Plaintiff was found guilty of the misconduct charge, and he was sentenced to disciplinary confinement in the SHU at LCP for two weeks as his sanction. As part of his claims remaining in his case, in addition to his excessive force claim, it appeared as though Plaintiff sought damages with respect to his disciplinary confinement after the July 14, 2006 incident. During a pre-trial conference, Plaintiff stated that he filed a grievance regarding his disciplinary conviction and sanction, and that he exhausted his administrative remedies available at LCP. However, Plaintiff admitted that he was not successful *via* the LCP administrative remedy process in having his disciplinary conviction and sentence overturned. Further, Plaintiff indicated that he did not successfully have his disciplinary conviction and sentence overturned through any other proceeding, such as a habeas corpus petition under 28 U.S.C. § 2254.

---

3. In its December 1, 2009 Memorandum, the District Court noted that Defendants' Summary Judgment Motion did not "address Plaintiff's claim that [Defendant] Captain Katz improperly subjected him to a term of disciplinary custody" after the July 14, 2006 incident. The Court thus held that this claim would also proceed to trial. (Doc. 283, p. 15, n. 6).

It appeared to this Court that, to the extent that Plaintiff was deemed as challenging his disciplinary conviction on the July 14, 2006 misconduct charge and his 2-week disciplinary confinement sanction he received, and to the extent he sought damages on this claim, which may have affected the validity of his disciplinary conviction, this claim may be *Heck* barred until Plaintiff successfully had this stated disciplinary conviction overturned.

In *Braggs v. Flatt*, 2009 WL 2750120, *4-*5 (W. D. Pa.), the Court stated:

> *Heck v. Humphrey* [512 U.S. 447 (1994) ] and its progeny. In *Heck,* the Supreme Court held that a prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Court has summarized this so-called "favorable termination requirement" by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-**no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings**)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). *See also Hill v. McDonough,* 574 U.S. 73 (2006); *Muhammad v. Close,* 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).
>
> Further, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended *Heck* further by holding that a state prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated. 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906.

(Emphasis added); *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *8 (M.D. Pa.).

Thus, any claim of Plaintiff Reynolds which would impugn the validity of his July 14, 2006 disciplinary conviction at LCP and his 2-week disciplinary confinement he received as a

sanction regarding the failure to obey an order misconduct charge would be precluded by *Heck*. *See Washam v. Stesis*, 321 Fed. Appx. 104, 105 (3d Cir. 2009); *Sandy v. Lehigh Co. Dist. Attorney*, 2008 WL 910001, *1-*2 (E.D. Pa.).

Upon reviewing the *Heck* briefs of the parties, and after hearing from the parties at the June 4, 2010 final telephonic pre-trial conference, it is apparent that Plaintiff seeks to testify about the conditions of his 2-week confinement in the SHU at LCP following the July 14, 2006 incident, and that he does not seek to invalidate his disciplinary conviction. Nor does Plaintiff seek damages for harm caused by his SHU confinement that implicate the validity of his disciplinary conviction.

In *Howard v. BOP*, 2008 WL 318387, *17-*18 (M.D. Pa.), the Court stated:

"[The *Heck*] rule applies to claims challenging 'prison disciplinary sanctions that alter the duration of a prisoner's incarceration,' such as the loss of statutory good time that resulted from the incident reports at issue here, but does not apply 'to claims that implicate only the conditions, and not the fact or duration, of a prisoner's incarceration.'" (emphasis added) quoting *Torres v. Fauver*, 292 F. 3d 141, 143 (3d Cir. 2002); *Wilkins v. Bittenbender*, 2007 WL 708993, *1 (3d Cir. 2007).

Plaintiff Reynolds has represented to this Court that he is not seeking to give testimony which would necessarily imply the invalidity of his disciplinary conviction and the 2-week SHU confinement sanction he received. Rather, Plaintiff states that he seeks to testify about the conditions of his 2-week confinement in the SHU at LCP, such as his alleged inability to use the law library during this time and the alleged destruction of his legal materials, which he states were supposed to be boxed and given to him in the SHU after he was confined there following the July 14, 2006 incident.

This Court finds that the recent Third Circuit case of *Arango v. Winstead*, 352 Fed. Appx. 664 (3d Cir. 2009), is on point with our case. In *Arango*, the Court stated:

> The District Court ruled that [inmate] Arango's due process claim was not cognizable under 42 U.S.C. § 1983 because of the "favorable termination rule" announced in *Heck* and extended to prison disciplinary sanctions that alter the duration of the prisoner's incarceration in *Edwards*. Under that rule, a § 1983 plaintiff cannot seek damages for harm caused by actions that implicate the validity of the fact or length of her confinement, unless she can prove that the sanction has been reversed, invalidated, or called into question by a grant of federal habeas corpus relief. *Heck,* 512 U.S. at 486-87, 114 S.Ct. 2364; *Edwards,* 520 U.S. at 646-48, 117 S.Ct. 1584. This bar applies not only to requests for money damages, but also to requests for equitable and declaratory relief. *See Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). However, claims that relate only to the conditions, and not the fact or duration, of incarceration are not subject to the favorable termination rule. *See Wilkinson,* 544 U.S. at 82, 125 S.Ct. 1242; *Torres v. Fauver,* 292 F.3d 141, 145, 150 (3d Cir.2002).
>
> Arango challenges the prison officials' actions that resulted in her placement in restricted housing for thirty days and removal from a prison program. Because these sanctions did not alter the length of her incarceration, the success of her claim would not "necessarily imply the invalidity" of the fact or duration of her confinement. *Edwards,* 520 U.S. at 646, 117 S.Ct. 1584; *Torres,* 292 F.3d at 150. Thus, Arango's claim is not subject to the favorable termination rule and is cognizable under 42 U.S.C. § 1983.

*Id*. at 665-666.

As in *Arango*, this Court finds that Plaintiff Reynolds is challenging the LCP official's, namely Defendant Katz's, actions that resulted in his placement in restricted housing (SHU) for two weeks and his inability to use the law library and have his legal materials. Because these sanctions did not alter the length of Plaintiff's incarceration, the success of his claim would not "necessarily imply the invalidity" of the fact or duration of his confinement. Thus, the Court finds that to the extent stated herein, Plaintiff Reynolds' testimony about the conditions of his two-week SHU confinement at LCP following the July 14, 2006 incident is not *Heck*-barred.

Plaintiff Reynolds' claim regarding his 2-week confinement in the SHU at LCP following the July 14, 2006 incident relate only to the conditions, and not the fact or duration, of his SHU confinement.  Plaintiff challenges the conduct of Defendant Katz that resulted in his placement in the SHU for two weeks and his alleged inability to use the law library and access his legal materials while confined in the SHU.  This claim does not affect the length of his incarceration or the fact of his two week confinement in the SHU.  Therefore, Plaintiff 's testimony regarding the conditions of his 2-week confinement in the SHU at LCP after the  July 14, 2006 incident is not *Heck* barred.

During the June 4, 2010 final pre-trial conference, defense counsel argued that to the extent Plaintiff was asserting a due process claim regarding his 2-week confinement in the SHU at LCP, he failed to state a cognizable claim since he was not deprived of a liberty interest protected by the Due Process Clause.  The Court agrees with defense counsel.  In *Arango*, after the Third Circuit Court found that the Plaintiff inmate's claim regarding her placement in restricted housing for 30 days and removal from a prison program was not *Heck* barred since her claim related only to the conditions of her restricted housing confinement and the sanctions she received did not alter the length of her incarceration, the Court held that the Plaintiff inmate did not state a plausible violation of a protected liberty interest.  Thus, the Third Circuit Court found that Plaintiff Arango's due process claim was subject to dismissal since she failed to state a deprivation of a protected liberty interest.  Specifically, the *Arango* Court stated:

> Although Arango's due process claim is cognizable under 42 U.S.C. § 1983, to survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, her complaint "must contain sufficient factual matter" to state a plausible claim of a deprivation of a liberty interest protected by the Due Process Clause. *Iqbal,* 129 S.Ct. at 1949. The Supreme Court has recognized that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed

upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Asquith v. Dep't of Corr.,* 186 F.3d 407, 410 (3d Cir.1999) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Due process applies only where the conditions of confinement impose "atypical and significant hardship [s] on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Placement in administrative segregation for days or months at a time or transfers to more restrictive custody do not implicate a protected liberty interest. *See Torres,* 292 F.3d at 150; *Fraise v. Terhune,* 283 F.3d 506, 522-23 (3d Cir.2002). Nor does removal from a prison program, as restriction from participation in prison programs is among the conditions of confinement that an inmate may reasonably anticipate during her incarceration. *See James v. Quinlan,* 866 F.2d 627, 629 (3d Cir.1989). Therefore, Arango's complaint, alleging that she was removed from a program and placed in thirty days restrictive housing, did not state a plausible violation of a protected liberty interest.

352 Fed. Appx. at 666.

The *Arango* Court then held:

Because Arango's due process claim implicated only the conditions, and not the fact or duration, of her confinement, the District Court erred in ruling that the claim was not cognizable under 42 U.S.C. § 1983. However, a Fed.R.Civ.P. 12(b)(6) dismissal was appropriate because Arango's complaint did not state a deprivation of a protected liberty interest, and we will summarily affirm the District Court's grant of defendant's motion to dismiss for that reason.

*Id*.

Thus, while the Court agrees with Plaintiff Reynolds that his claim regarding the conditions of his 2-week confinement in the SHU at LCP is not *Heck* barred, the Court also agrees with Defendants that this claim does not state a viable due process claim, since Plaintiff's allegations that he did not have access to the law library and his legal materials when he was placed in the SHU for two weeks, does not state a deprivation of a protected liberty interest. Restrictions from using the law library and restrictions to personal belongings while in temporary disciplinary

confinement in the SHU are conditions of confinement that an inmate may reasonably anticipate during his incarceration.

In the June 4, 2010, final pre-trial conference, Plaintiff indicated to the Court that he will attempt to use his testimony regarding the conditions of his two-week SHU confinement at LCP following the July 14, 2006 incident to support his claim for punitive damages against the three remaining individual Defendants. On June 4, 2010, Plaintiff filed a Motion for Punitive Damages and a support brief. (Docs. 368 and 369). The Court notes that Plaintiff correctly recognizes that he may be able to recover punitive damages against the three individual Defendants in this case on his § 1983 claims.[4]

As the Court stated in *Patel v. Himalayan Intern. Inst. of Yoga Science and Phil.*, 1999 WL 33747891 (M.D. Pa.), punitive damages are intended to punish and deter. In *Coleman v. Kaye*, 87 F. 3d 1491, 1497 (3d Cir. 1996), the Third Circuit held:

> punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

---

4. The Plaintiff is statutorily precluded from recovering punitive damages against local governmental agencies but not against the individual Defendants. The Supreme Court has determined that, absent a statute to the contrary, punitive damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748 (1981). However, this preclusion of a punitive damages remedy does not apply to the individual defendants. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625 (1983). In *Smith*, the Court held that punitive damages may be recovered from individual defendants in certain §1983 cases.

Further, in *Brennan v. Twp. of Teaneck*, 350 F. 3d 399, 429-430 (3d Cir. 2003), the Court held that retaliatory motive may be insufficient alone in § 1983 retaliation action to satisfy the award of punitive damages. The *Brennan* Court stated that "it is clear under the Court's holding in *Smith v. Wade* that punitive damages require more than the retaliatory motive itself." *Id.*

In *Pribula v. Wyoming Area School Dist.*, 599 F. Supp. 2d 564, 580 (M.D. Pa. 2009), the Court stated that "[p]unitve damages may be awarded in a case brought pursuant to 42 U.S.C. § 1983 'when the Defendant 's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"

The Court will allow Plaintiff Reynolds' testimony about the conditions of his two-week SHU confinement at LCP following the July 14, 2006 incident insofar as he seeks to offer it to support his claim for punitive damages against the three individual Defendants. The Court will not permit such testimony to the extent that Plaintiff seeks to support a due process claim. Moreover, after the close of testimony at trial, if the Court finds insufficient evidence presented by Plaintiff with respect to his claim for punitive damages based upon the above stated standard, the Court may dismiss this claim and may not charge the jury with respect to it. Also, if Plaintiff's punitive damages claim is dismissed at trial, there will be no questions regarding such claim in the Jury Interrogatories.

Finally, there appears to be a discrepancy as to under which constitutional provision Plaintiff Reynolds' excessive force claim falls. The Court had been referencing an excessive force claim in this case that would be considered under the standard for such a claim under the Eighth Amendment. Plaintiff Reynolds contends that since he was a pre-trial detainee at LCP during the relevant time of his excessive force claim, it does not fall under the Eighth Amendment. Plaintiff

stated that his excessive force claim is brought under the Fourth Amendment. The Court finds that Plaintiff's excessive force claim is brought pursuant to the Fifth Amendment Due Process Clause since he was a federal pre-trial detainee at the relevant time. Indeed, the District Court has made this determination in its December 1, 2009 Memorandum, Doc. 283, pp. 11-13. The District Court cited to *Suprenant v. Rivas*, 424 F.3d 5, 18 (3d Cir. 2005), and quoted the Third Circuit as follows: "A pre-trial detainee's claim that he has been subjected to unconstitutional conditions of confinement . . . are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." (*Id.*, p. 11). The District Court then relied in part on *Fuentes v. Wagner*, 206 F.3d 335 (3d Cir.), *cert. denied*, 531 U.S. 821 (2000), regarding the Eighth Amendment standard. (*Id.*, p. 12).

In *Redman v. Kennedy*, 2008 WL 5110783, *2 (W. D. Pa.), the Court stated:

> *Fuentes v. Wagner* sets forth the standard for evaluating excessive force claims brought by pretrial detainees under the Due Process Claim of the Fourteenth Amendment:[5]
>
> > A detainee may not be punished prior to an adjudication of guilt in accordance with the due process of law. However, once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Thus, restraints that are reasonable related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are

---

5. Since Plaintiff Reynolds was a federal pre-trial detainee at the relevant time of his excessive force claim, the Fifth Amendment Due Process Clause applies to his claim, as opposed to the Fourteenth Amendment Due Process Clause applicable to state pre-trial detainees. Regardless of whether the inmate is a state or federal pre-trial detainee, the standards developed in excessive force claims filed by inmates under the Eighth Amendment are applicable to Plaintiff Reynolds' case.

discomforting. Obviously, ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both. Consequently, whether ... restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive government purpose and whether they appear excessive in relation to that purpose. Thus, there is a distinction between punitive measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may.

206 F.3d 335, 342 (3d. Cir.2000) (internal citations omitted).FN1 For a pretrial detainee to state an excessive force claim against a prison official, he must adduce evidence that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

FN1. Although Redman does not state the specific grounds for his constitutional claims, his complaint appears to allege a claim for use of excessive force. The Eighth Amendment does not directly apply to pretrial detainees. *Wilson v. Spain,* 209 F.3d 713, 715 (8th Cir.2000) ("the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences."). Instead, the relevant inquiry is the due process analysis set forth in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (**applying Fifth Amendment due process clause to Federal pretrial detainees**), and *Hubbard v. Taylor,* 399 F.3d 150 (3d Cir.2005) (applying *Bell'* s analysis, under Fourteenth Amendment due process clause, to State pretrial detainees). Under *Bell,* the question is whether the challenged conditions of confinement "amount to punishment of the detainee ... prior to an adjudication of guilt in accordance with due process of law." 441 U.S. at 535. Therefore, while the Eighth Amendment protects convicted prisoners from "cruel and unusual punishments," the Due Process Clause of the Fourteenth

Amendment protects pretrial detainees from the purposeful infliction of punishment without due process of law. *Hubbard*, 399 F.3d at 158.

The factors that are relevant to this inquiry include: "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citations omitted). An inmate does not have to show that the harm suffered was sufficiently serious in order to make out a constitutional violation where excessive force was used. Absence of serious injury does not end the inquiry. *Hudson*, 503 U.S. at 7. *See also Brooks v. Kyler*, 204 F.3d 102, 104 (3d. Cir.2000) ("Following *Hudson*'s focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any [constitutional violation] analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force").

(Emphasis added). *See also Gottlieb v. Laurel Highlands Sch. Dis.*, 272 F.3d 168, 172-73 (3d Cir. 2001).

In *Cole v. Mistick*, 2009 WL 1160962, *7 (W.D. Pa.), the Court held:

This court has already determined that the proper standard for Plaintiff's excessive force claims is the standard under the substantive due process clause of the Fourteenth Amendment given that Plaintiff was a pre-trial detainee. Dkt. [114] at 4 to 5.

In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). While *Hudson* was an Eighth Amendment standards case involving convicted prisoners, that same standard applies to pre-trial detainees at least under the circumstances of this case which involve Plaintiff engaging in two prison disturbances. *Fuentes v. Wagner*, 206 F.3d 335, 347 (3d Cir.2000) ("Accordingly, we hold that the Eighth Amendment cruel and unusual punishments standards found in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) and *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992),

apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance."). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. *Hudson,* 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id. See also Brooks v. Kyler,* 204 F.3d 102, 104 (3d Cir.2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force).

The significance of the *Hudson* and *Brooks* line of cases is that they essentially did away with the traditional requirement of an objective serious deprivation and focused solely on the subjective intent of the actor. *Brooks v. Kyler,* 204 F.3d 102, 108 (3d Cir.2000) ("In *Hudson,* the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' ..., the latter kind of claim has no such requirement ...").

The Court does not agree with Plaintiff Reynolds to the extent he was deemed as stating that his excessive force claim was brought under the Fourth Amendment. In *Jankowski v. Demand,* 2008 WL 1901347, *6 (W.D. Pa.), the Court stated as follows:

The Fourth Amendment governs excessive force claims only within the context of those claims stemming from an arrest or investigatory stop. *Fuentes v. Wagner,* 206 F.3d 335, 346-47 (3d Cir.2000) ( *citing Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Since Plaintiff's excessive force claim does not arise out of the events occurring during her arrest, but rather during pretrial detention, the Fourth Amendment does not apply. *Id.* Instead, as articulated by the Supreme Court in *Graham,* it is the Due Process Clause as applied to states through the Fourteenth Amendment, that offers protection to pretrial detainees putting forth claims of excessive force. 490 U.S. at 395, n. 10 ( *citing Bell v. Wolfish,* 441 U.S. 520, 535-539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). In order to establish a Due Process

14

violation, "... the detainee must show that the force used amounts to a wanton infliction of punishment, as opposed to an amount rationally related to exercising control." *Id.* ( *citing Fuentes,* 206 F.3d 335). If a plaintiff is unable to show that the use of force was wanton, the Court will then consider whether the use of force was "really an incident of a legitimate nonpunitive objective." *Fuentes,* 206 F.3d at 342.

Thus, Plaintiff Reynolds' excessive force claim raised in this case will be considered as brought under the Fifth Amendment Due Process Clause and the above stated standard regarding such a claim will be used, including the jury charge, in this case.[6]

**SO ORDERED**.


s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 8, 2010**

---

6. Since the Court has heard the arguments of the parties during the final pre-trial conference, and since the Court has addressed the remaining pre-trial issues in the foregoing Memorandum and Order, it will not conduct argument on these issues when the trial commences on June 8, 2010, after the jury is selected.